## Gross v. Clark, et al.

(Decided January 13, 1925.)

### Appeal from Pike Circuit Court.

1. Deeds—Evidence Held to Show Mental Competency of Parents to Execute Deeds to Several Children to Exclusion of One.—In daughter's action to cancel parents' deeds to brothers and sisters by which they conveyed to such brothers and sisters all of their real estate to exclusion of plaintiff, evidence held to prove father had sufficient mentality to execute deed.

2. Deeds—Evidence Held Insufficient to Show Parents' Deeds to Children Other than Plaintiff were Procured by Undue Influence.—In daughter's action to cancel parents' deeds to plaintiff's brothers and sisters, evidence held insufficient to show undue influence.

3. Appeal and Error—Chancellor's Determination as to Facts Accorded Some Weight by Court of Appeals.—In action to cancel deeds, Court of Appeals must attach some weight to chancellor's determination as to facts.

ROSCOE VANOVER for appellant.

PICKELSIMER & STEELE for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

In a suit in the Pike circuit court filed in the year 1920, Mrs. Lydia Gross sought a cancellation of certain deeds executed on the 24th day of August, 1910, by her deceased parents, in which they conveyed to her brothers and sisters all of their real estate, to her exclusion. From a judgment for defendants, plaintiff appeals.

The facts are:

Reuben Clark owned a farm of 400 or more acres of land in Pike county, upon which he lived, and raised seven children. Lydia was married to Hezekiah Gross about forty years ago, her father being opposed to the marriage. Shortly after her marriage her father became sick. Lydia had a wash kettle which he borrowed and used as a bath tub. She claims that she needed it for use; would go after it, use it and return it; while it is claimed by the other members of the family that she forcibly carried it away over her father's protest. She finally retained it, and this trivial incident caused an estrangement.

Aside from this, her husband undertook to make a settlement with her father in some business matter dur-

ing the latter's illness, and a quarrel ensued in which Mr. Clark drew a pistol. During all the years these grievances seem to have been nursed, though Lydia occasionally visited her father, and there is evidence that he became friendly with her.

The other children grew up and married. Some moved away, and one or two of the families located on their father's farm. The youngest, Edmund, grew up, married and continued to reside with his parents.

In the year 1910, the old gentleman, then about seventy years of age, undertook a division of his real estate and together with his wife executed several deeds for a portion thereof to each of his children excepting Lydia, the entire estate being thus conveyed. The consideration in each of the deeds, except that of Edmund, was $1.00 in hand, love and affection, and the additional sum of $25.00 to be paid the grantors.

The consideration in the deed to Edmund was the same except an agreement to care for and maintain the grantors during their lives, and also the grantors reserved a life estate in his part.

These deeds were delivered and recorded, and thereafter the old people continued to live on the farm with Edmund. Mrs. Clark died a few years thereafter and Reuben Clark died in 1920, whereupon this suit was brought.

While not a recluse Reuben Clark remained closely at home, seldom left the place, and never the neighborhood; he did not go to the county seat or attend church, took no interest in religion or politics, was at times poutful and petulent, but was quite fond of Edmund. At his suggestion Edmund procured blanks for the preparation of the deeds and also marked the dividing line between the tracts conveyed. Edmund was given land equal to one-half in value of the estate.

It is claimed that Reuben Clark had become reconciled to Lydia and had said that she would get her share. It is also claimed that prior to the execution of the deeds in question the grantors did execute other deeds of like character in which a consideration of $25.00 was to be paid to Lydia by each of the grantees; that these were never delivered and were not recorded for the reason that they did not conform to the statute in citing the source of title; that afterwards the present deeds were drawn in which the consideration was payable to the

grantors; that Edmund was prejudiced against Lydia. After the deeds were executed he requested each of the grantees to pay him the amount of recording fees that he might have them recorded and see that Lydia got no part of it, but not a witness states that the grantor was not mentally capable of making the deeds in question.

By the other side it is shown that Reuben Clark was a man of more than ordinary intelligence and of fair education; that he suffered no impairment, either physically or mentally; that he had never forgiven his daughter and had determined on disinheriting her; quite a number of disinterested witnesses testifying without qualification as to his strength of mind and character during all this time. The original deeds in question are made a part of the record in this court. They were prepared by him and are in his handwriting. Both the phraseology and construction indicate considerable skill for a man not versed in such transactions, and exhibit a continuity of thought inconsistent with mental weakness. Also the writing is firm and regular.

After the execution of the original deeds the various parties were put in possession of the tracts of land deeded to them. Grantor lived for nearly ten years thereafter, during which time he raised no question as to the validity of the deeds or as to his intention respecting them.

The appellant's situation is such as to excite the pity and sympathy of the court. It is indeed regrettable that she should be cut off without a penny while her brothers and sisters enjoy to a greater or less extent the father's bounty, but under the evidence it is clear that the grantor had sufficient mentality to make the deeds in question, and in view of the conflicting evidence, reinforced as it is by the judgment of the chancellor who is doubtless acquainted with the parties, and to whose opinion we must attach some weight, we cannot say that the grantor was unduly influenced in making the deeds in question.

Perceiving no error the judgment is affirmed.